## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Stellar Solutions Inc. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| VS. | ) | Case No. 16-cv-50301 |
| | ) | |
| Met - Chem Consultants, Inc., d/b/a Endpoint, Inc.; | ) | |
| Finite Finishes, Inc. d/b/a SwingnSplash;  Christine | ) | |
| Nausner;  Greg Nausner | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Stellar Solutions Inc., by and through its attorneys, hereby brings this action against Defendants Met - Chem Consultants, Inc., d/b/a Endpoint, Inc.;  Finite Finishes, Inc. d/b/a SwingnSplash;  Christine Nausner;  and Greg Nausner;  and alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction because this is a civil action for trademark infringement and related claims under the Lanham Act (15 U.S.C. § 1051 *et seq.*), with jurisdiction being expressly conferred by 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a); and because this is a civil action for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, with jurisdiction being conferred in accordance with 28 U.S.C. § 1331.  This Court also has pendent jurisdiction over the related state-law claims in accordance with 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because these claims are so related to the federal claims that they form a part of the same case or controversy.

2. This Court has personal jurisdiction over each of the parties, including each Defendant, and venue in this judicial district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to this action have occurred and continue to occur in this judicial district. Additionally, upon information and belief, each of the Defendants resides in, and are doing business in, this judicial district.

## THE PARTIES

3. Plaintiff, Stellar Solutions Inc., is a corporation organized under the laws of the State of Illinois, having an address of 4511 Prime Parkway, McHenry, Illinois 60050. Plaintiff is in the business of, *inter alia*, selling citric acid passivation solutions and other low-hazard products for cleaning and care of stainless steel.

4. Upon information and belief, Defendant Met - Chem Consultants, Inc., d/b/a Endpoint, Inc. (hereinafter "Endpoint") is a corporation organized under the laws of the State of Illinois, having an address of 2245 N. Central Avenue, Rockford, Illinois 61101. Endpoint is in the business supplying chemicals to the metal finishing industry.

5. Upon information and belief, Defendant Finite Finishes, Inc. d/b/a SwingnSplash (hereinafter "SwingnSplash") is a corporation organized under the laws of the State of Illinois, having an address of 2245 N. Central Avenue, Rockford, Illinois 61101. SwingnSplash is in the business of, *inter alia*, selling and servicing swimming pools and children's play equipment.

6. Upon information and belief, Defendant Greg Nausner resides at 1953 Chelsea Avenue, Freeport, Illinois 61032. He is the President of Endpoint, and is the President and Registered Agent of SwingnSplash. Upon information and belief, he is a controlling principal of Endpoint and SwingnSplash, exercises extensive control over Endpoint and

SwingnSplash, and is an active participant and primary actor behind the wrongful acts of Endpoint and SwingnSplash complained of herein for the gain of Endpoint and SwingnSplash and for his individual gain.

7. Upon information and belief, Defendant Christine Nausner resides at 1953 Chelsea Avenue, Freeport, Illinois 61032. She is the Registered Agent of Endpoint, and is the Secretary of SwingnSplash. Upon information and belief, she is a controlling principal of Endpoint and SwingnSplash, exercises control over Endpoint and SwingnSplash, and is an active participant behind the wrongful acts of Endpoint and SwingnSplash complained of herein for the gain of Endpoint and SwingnSplash and for her individual gain.

## FACTUAL ALLEGATIONS

8. Plaintiff was incorporated on January 17, 1995. Since at least as early as 1995, long prior to Defendants' complained-of acts, Plaintiff has sold chemicals for use in the manufacture of and passivation of stainless steel under the trademark "CitriSurf."

9. Plaintiff is the owner of U.S. Trademark Registration No. 2,549,508 for "CITRISURF" for use with *"Citric acid for use in the manufacture of stainless steel"* in International Class 001 and *"Citric acid for use as a cleaner in the manufacture of stainless steel"* in International Class 003. Plaintiff is also the owner of U.S. Trademark Registration No. 4,360,101 (International Registration Number 1,124,208) for "CITRISURF" for use with *"Citric acid formulation for passivating metal and metal components"* in International Class 001 and *"Citric acid formulation for cleaning metal and metal components"* in International Class 003. (Collectively, the "CitriSurf Marks").

10. Plaintiff also is the owner of U.S. Trademark Registration No. 2,549,509 for "STELLAR SOLUTIONS" for use with *"Citric acid for use in the manufacture of stainless steel"* in

International Class 001 and "*Citric acid for use as a cleaner in the manufacture of stainless steel*" in International Class 003. Plaintiff is also the owner of U.S. Trademark Registration No. 4,360,100 for "STELLAR SOLUTIONS" for use with "*Citric acid formulation for passivating metal and metal components*" in International Class 001 and "*Citric acid formulation for cleaning metal and metal components*" in International Class 003. (Collectively, the "Stellar Solutions Marks")

11. The registrations of the CitriSurf Marks and the Stellar Solutions Marks are attached as Exhibit A.

12. Plaintiff sells many different formulations under the CitriSurf brand. For example, CitriSurf 2250 is used for most grades of stainless steel, including austenitic, ferritic, martensitic, and precipitation hardening; while CitriSurf 3050 is for austenitic grades of stainless steel where very low foaming is required. These numbers are arbitrary and were invented by Plaintiff.

13. Plaintiff's customers use CitriSurf products, *inter alia*, to clean surgical equipment and to render metal orthopedic implants more resistant to corrosion. For example, if a surgeon needed to place a screw into a patient's hip, that screw would first be passivated with CitriSurf or a comparable product.

14. Plaintiff sells its CitriSurf and other products both throughout the United States and internationally. Plaintiff has distributors in, *inter alia*, Canada, Europe, Israel, Australia, Latin America, South Africa, India, and Thailand.

15. Plaintiff has invested significant money to establish a valuable reputation and goodwill in the name CitriSurf by reason of its use, promotion, and sale of goods in association with the name CitriSurf.

16. As a result of Plaintiff's long use and extensive marketing efforts, Plaintiff's name CitriSurf is well-known, and the public has come to associate CitriSurf with Plaintiff.

17. When selling its products, Plaintiff prepares a Safety Data Sheet (SDS) for each product to deliver therewith. Plaintiff updates its SDSs from time to time in order to comply with relevant legal regulations.

18. The precise formulae of Plaintiff's CitriSurf products are not generally known. Plaintiff's SDS states that CitriSurf contains proprietary ingredients (except for citric acid, which is listed by name).

19. Plaintiff has never divulged any of the CitriSurf formulae to anyone, including the third-party blenders who prepare the CitriSurf products, without first obtaining a signed non-disclosure agreement from the recipient. Plaintiff has never disclosed any of its formulae to any of the Defendants.

20. Defendant Endpoint is a distributor for Plaintiff. On or about August 16, 1996, Plaintiff entered into a distributor agreement (the "Distributor Agreement") with Endpoint. A copy of that Distributor Agreement is attached as Exhibit B.

21. Defendants have not purchased CitriSurf products from Plaintiff since on or about January 14, 2015.

22. On or about August 29, 2016, Plaintiff learned that Defendants were selling product labeled with the CitriSurf mark that nevertheless did not originate from Plaintiff. The labels on the containers of this counterfeit product have Endpoint's name, address, and phone number on them, but do not have Plaintiff's name or contact information.

23. These sales of counterfeit product were occurring at least as early as 2014.

24. Moreover, upon information and belief, along with these containers of counterfeit product, Endpoint delivered copies of out-of-date SDSs, which were not compliant with the latest legal regulations. Upon information and belief, such out-of-date SDSs bear Plaintiff's Stellar Solutions Marks.

25. Plaintiff is aware of at least four of Plaintiff's customers who received counterfeit product from Endpoint. All such customers believed that the counterfeit product that they had received from Defendants was actually genuine CitriSurf product from Plaintiff.

26. Plaintiff has never licensed the use any of the CitriSurf Marks to any of the Defendants for use with Defendants' own products.

27. Plaintiff does not know whether the counterfeit product was properly-formulated CitriSurf product, or whether the counterfeit product was a non-CitriSurf product that was put into a container labeled as CitriSurf.

28. If the counterfeit product is actually properly-formulated CitriSurf product, then, upon information and belief, Greg Nausner improperly obtained the formula by spying on one of Plaintiff's third-party blenders.

29. Until on or about 2011, Endpoint's office was next door to one of Plaintiff's third-party commercial blenders.

30. Upon information and belief, SwingnSplash and Endpoint are under common ownership, and share a common address and office.

31. SwingnSplash processes at least some of the credit card transactions meant to pay invoices from Endpoint. On information and belief, SwingnSplash has received money for at least some of the counterfeit product sold by Endpoint.

32. Additionally, upon information and belief, several people have attempted to contact Greg Nausner at Endpoint, and have been met with a recording instructing the callers to contact him at SwingnSplash.

33. As of filing the instant complaint, Endpoint is listed as "Not In Good Standing" with the Illinois secretary of State.

34. Upon information and belief, Endpoint is going out of business, and its assets are being transferred to SwingnSplash.

35. Upon information and belief, Endpoint and SwingnSplash have so comingled their assets and operations that they ought to be considered alter egos of one another, and therefore treated as a single entity.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

36. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 35.

37. Long after Plaintiff began using the CitriSurf Marks, and after the registrations had issued for the CitriSurf Marks, Defendants began to distribute counterfeit products labeled as genuine CitriSurf products.

38. Upon information and belief, Defendants knowingly, intentionally, and maliciously used the CitriSurf Marks with a bad-faith motive to trade upon Plaintiff's goodwill and mislead customers into believing that they were receiving Plaintiff's genuine CitriSurf products.

39. Defendants' unauthorized use of the CitriSurf Marks infringes Plaintiff's federally-registered trademarks, in violation of 15 U.S.C. § 1114.

40. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Defendants' profits; and

C. Treble damages, pursuant to 15 U.S.C. § 1117; and

D. Reasonable attorney's fees and costs of this action, due to the exceptional nature of Defendants' actions; and

E. An injunction, against all Defendants, enjoining further infringement, as well as seizure of all counterfeit product; and

F. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

G. Such other and further relief as the Court may deem just and equitable.

## COUNT II: FEDERAL COUNTERFEITING

41. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 40.

42. Defendants' use of CitriSurf constitutes a spurious mark which is identical to Plaintiff's CitriSurf Marks, and is thus a counterfeit of a mark that is registered on the principal register.

43. Defendants' use of CitriSurf therefore constitutes a counterfeit mark, under 15 U.S.C. § 1116(d).

44. Defendants' aforesaid acts of counterfeiting are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Defendants' profits; and

C. Alternatively to A and B above, statutory damages pursuant to 15 U.S.C. 1117(c), in an amount to be determined before final judgment is rendered by this Court; and

D. Treble damages, pursuant to 15 U.S.C. § 1117; and

E. Reasonable attorney's fees and costs of this action, due to the exceptional nature of Defendants' actions; and

F. An injunction, against all Defendants, enjoining further infringement, as well as seizure of all counterfeit product; and

G. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge

the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

H. Such other and further relief as the Court may deem just and equitable.

## COUNT III: FALSE DESIGNATION OF ORIGIN

45. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 44.

46. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products using the CitriSurf Marks has created and will continue to create a likelihood of confusion, mistake and deception among consumers as to the affiliation, connection, or association between Plaintiff and Defendants' counterfeit products, in violation of 15 U.S.C. § 1125(a).

47. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products using the CitriSurf Marks creates a likelihood of confusion, mistake and deception among consumers as to the origin, sponsorship, or approval of Defendants' counterfeit products by Plaintiff, 15 U.S.C. § 1125(a).

48. Additionally, supplying customers with out-of-date SDSs that bear Plaintiff's Stellar Solutions Marks is likely to confuse or deceive regulators – including, *inter alia*, OSHA – that Plaintiff is the source, or is otherwise responsible for, of such out-of-date SDSs.

49. Upon information and belief, Defendants knowingly, intentionally, and maliciously used the CitriSurf Marks and Stellar Solutions Marks with a bad-faith motive to trade upon Plaintiff's goodwill and mislead customers into believing that they were receiving Plaintiff's genuine CitriSurf products with accurate and up-to-date SDSs.

50. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Defendants' profits; and

C. Treble damages, pursuant to 15 U.S.C. § 1117; and

D. Reasonable attorney's fees and costs of this action, due to the exceptional nature of Defendants' actions; and

E. An injunction, against all Defendants, enjoining further infringement, as well as seizure of all counterfeit product and out-of-date SDSs; and

F. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

G. Such other and further relief as the Court may deem just and equitable.

## COUNT IV: FEDERAL UNFAIR COMPETITION

51. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 50.

52. Defendants' unauthorized use of the CitriSurf Marks and Stellar Solutions Marks constitutes a misleading use of a word, term, symbol, trade dress, or device, in violation of 15 U.S.C. § 1125(a).

53. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Defendants' profits; and

C. Treble damages, pursuant to 15 U.S.C. § 1117; and

D. Reasonable attorney's fees and costs of this action, due to the exceptional nature of Defendants' actions; and

E. An injunction, against all Defendants, enjoining further infringement, as well as seizure of all counterfeit product and out-of-date SDSs; and

F. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

G. Such other and further relief as the Court may deem just and equitable.

## COUNT V: ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

54. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 53.

55. Defendants' unauthorized use of the CitriSurf Marks and Stellar Solutions Marks constitutes engagement in deceptive trade practices that are greatly damaging to Plaintiff, in violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510).

56. Defendants' deceptive trade practices occur primarily and substantially in Illinois, and the counterfeit products are used by Illinois residents.

57. Upon information and belief, Defendants willfully engaged in the aforesaid deceptive trade practices by knowingly, intentionally, and maliciously using the CitriSurf Marks and Stellar Solutions Marks with a bad faith motive to trade upon Plaintiff's goodwill and to deceive consumers.

58. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Defendants' profits; and

C. Reasonable attorney's fees and costs of this action, pursuant 815 ILCS 510/3, due to the willful nature of Defendants' actions; and

D.  An injunction, against all Defendants, enjoining further deceptive trade practices, as well as seizure of all counterfeit product and out-of-date SDSs; and

E.  Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

F.  Such other and further relief as the Court may deem just and equitable.

## COUNT VI: ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

59. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 58.

60. Defendants' unauthorized use of the CitriSurf Marks and Stellar Solutions Marks constitutes engagement in unfair methods of competition and deceptive acts and practices that are damaging to Plaintiff, in violation of Section 2 of the Illinois Consumer Fraud And Deceptive Business Practices Act (815 ILCS 505/2).

61. Defendants' acts occur primarily and substantially in Illinois, and the counterfeit products are used by Illinois residents.

62. Upon information and belief, Defendants willfully engaged in the aforesaid acts of fraud and deception by knowingly, intentionally, and maliciously using the CitriSurf Marks with a bad faith motive to trade upon Plaintiff's goodwill and to deceive consumers.

63. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against

Defendants, jointly and severally for:

    A.  Plaintiff's damages in an amount to be proven at trial; and

    B.  Reasonable attorney's fees and costs of this action, pursuant to 815 ILCS 505/10a, due to

        the exceptional nature of Defendants' actions; and

    C.  An injunction, against all Defendants, enjoining further unfair methods of competition

        and deceptive acts and practices, as well as seizure of all counterfeit product and out-of-

        date SDSs; and

    D.  Due to the potential dangers to the life and health of Defendants' customers (and to

        downstream buyers from those customers), a court order requiring Defendants to divulge

        the chemical formulae used to make the counterfeit products and a list of all those to

        whom counterfeit products were sold; and

    E.  Such other and further relief as the Court may deem just and equitable.

## <u>COUNT VII: ILLINOIS COMMON LAW UNFAIR COMPETITION</u>

64. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set

    forth in Paragraphs 1 through 63.

65. Defendants' unauthorized use of the CitriSurf Marks constitutes unfair competition under

    Illinois common law.

66. Upon information and belief, Defendants willfully engaged in the aforesaid acts of unfair

    competition by knowingly, intentionally, and maliciously using the CitriSurf Marks with

    a bad faith motive to trade upon Plaintiff's goodwill and to deceive consumers.

67. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Reasonable attorney's fees and costs of this action, due to the exceptional nature of Defendants' actions; and

C. An injunction, against all Defendants, enjoining further acts of unfair competition, as well as seizure of all counterfeit product and out-of-date SDSs; and

D. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

E. Such other and further relief as the Court may deem just and equitable.

## COUNT VIII: BREACH OF CONTRACT

68. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 67.

69. In Section 2 of the parties' Distributor Agreement, Endpoint agreed, in relevant part, that Endpoint would "safeguard [Plaintiff's] trademarks," "report any unauthorized use of [Plaintiff's trademarks]," and "ensure that no products of other companies are ever sold as [Plaintiff's] Products."

70. Defendants have repeatedly breached the aforesaid by selling counterfeit products.

71. Defendants' actions in selling counterfeit products, rather than selling Plaintiff's genuine products, to Plaintiff's customers also constitute a breach of the implied covenant of good faith and fair dealing that is inherent in every contract as a matter of Illinois law.

72. Defendants' breach has led to loss of sales, harm to Plaintiff's reputation, and other damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

C. Such other and further relief as the Court may deem just and equitable.

## COUNT IX: FEDERAL MISAPPROPRIATION OF TRADE SECRETS

73. This count assumes that the counterfeit product was, in fact, properly-formulated CitriSurf product.

74. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 72.

75. Plaintiff's confidential and proprietary information pertaining to its CitriSurf formulae constitute protectable trade secrets as set forth in 18 U.S.C. § 1839.

76. The CitriSurf formulae derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from the disclosure or use thereof.

77. Plaintiff has taken reasonable measures to maintain the secrecy and confidentiality of the CitriSurf formulae.

78. Plaintiff did not consent to the use of its trade secrets by any of the Defendants.

79. Defendants have reason to know that the CitriSurf formulae are confidential and are considered trade secrets by Plaintiff. Moreover, upon information and belief, Defendants had actual knowledge that the CitriSurf formulae are confidential and are considered trade secrets by Plaintiff.

80. Upon information and belief, Defendants used improper means to acquire knowledge of Plaintiff's trade secrets.

81. Upon information and belief, Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

82. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Exemplary damages in the amount of twice the amount of Plaintiff's damages, pursuant to 18 U.S.C. § 1836(b)(3)(C); and

C. Reasonable attorney's fees and costs of this action, pursuant to 18 U.S.C. §
   1836(b)(3)(C), due to the willful and malicious nature of Defendants' actions; and

D. An injunction, against all Defendants, enjoining further misappropriation, as well as
   seizure of all product made using Plaintiff's trade secrets; and

E. Such other and further relief as the Court may deem just and equitable.

## **COUNT X: ILLINOIS STATE MISAPPROPRIATION OF TRADE SECRETS**

83. This count assumes that the counterfeit product was, in fact, properly-formulated
    CitriSurf product.

84. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set
    forth in Paragraphs 1 through 82.

85. Plaintiff's confidential and proprietary information pertaining to its CitriSurf formulae
    constitute protectable trade secrets as set forth in the Illinois Trade Secrets Act
    (765 ILCS 1065).

86. The CitriSurf formulae derive independent economic value from not being generally
    known to the public or to other persons who can obtain economic value from their
    disclosure or use.

87. Plaintiff uses reasonable efforts, under the circumstances, to maintain the secrecy and
    confidentiality of the CitriSurf formulae.

88. Plaintiff did not consent to the use of its trade secrets by any of the Defendants.

89. Defendants should have known that the CitriSurf formulae are confidential and are
    considered trade secrets by Plaintiff. Moreover, upon information and belief, Defendants
    had actual knowledge that the CitriSurf formulae are confidential and are considered
    trade secrets by Plaintiff.

90. Upon information and belief, Defendants used improper means to acquire Plaintiff's trade secrets.

91. Upon information and belief, Defendants' appropriation of Plaintiff's trade secrets was willful and malicious, and done in bad faith.

92. Defendants' aforesaid acts are likely to greatly and irreparably damage Plaintiff, may already have so damaged Plaintiff, and will continue to damage Plaintiff unless and until such acts are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Exemplary damages in the amount of twice the amount of Plaintiff's damages, pursuant to 765 ILCS 1065/4(b); and

C. Reasonable attorney's fees and costs of this action, due to the willful and malicious nature of Defendants' actions; and

D. An injunction, against all Defendants, enjoining further misappropriation, as well as seizure of all product made using Plaintiff's trade secrets; and

E. Such other and further relief as the Court may deem just and equitable.

## COUNT XI: TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

93. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in Paragraphs 1 through 92.

94. As stated previously, Endpoint (and, therefore, Greg Nausner) was a distributor of CitriSurf products for Plaintiff. According to the Distributor Agreement, Endpoint was to

be Plaintiff's exclusive distributor within Rockford, IL and Loves Park, IL, as well as for certain other accounts outside of those towns. Endpoint was also a non-exclusive distributor for Plaintiff in other regions of the Unites States, including in states other than Illinois.

95. Plaintiff has a reasonable expectancy of a valid business relationship with its customers in the form of ongoing sales.

96. Defendants knew of such expectancy.

97. Defendants intentionally interfered with and prevented Plaintiff's expectancy by acquiring and selling counterfeit product, rather than ordering legitimate product from Plaintiff.

98. Plaintiff has suffered injury in the form of loss of sales, harm to Plaintiff's reputation, and other damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks the court to enter judgment in favor of Plaintiff and against Defendants, jointly and severally for:

A. Plaintiff's damages in an amount to be proven at trial; and

B. Due to the potential dangers to the life and health of Defendants' customers (and to downstream buyers from those customers), a court order requiring Defendants to divulge the chemical formulae used to make the counterfeit products and a list of all those to whom counterfeit products were sold; and

C. For such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

One of Plaintiffs' Attorneys

Page **21** of **22**

/s/ Brie A.Crawford
Crawford Intellectual Property Law LLC
1095 Pingree Road, Suite 204
Crystal Lake, IL 60014
Phone: 815-893-8149
Facsimile: 815-261-4350
Attorney No:  6285974

EXHIBIT A

 **United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Sep 13 03:21:03 EDT 2016*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | | CURR LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| Logout | Please logout when you are done to release system resources allocated for you.

| Start | List At: [        ] OR | Jump | to record: [        ] **Record 19 out of 21**

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## CITRISURF

| | |
|---|---|
| **Word Mark** | CITRISURF |
| **Goods and Services** | IC 001. US 001 005 006 010 026 046. G & S: Citric acid for use in the manufacture of stainless steel. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| | IC 003. US 001 004 006 050 051 052. G & S: Citric acid for use as a cleaner in the manufacture of stainless steel. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76141202 |
| **Filing Date** | October 5, 2000 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 25, 2001 |
| **Registration Number** | 2549508 |
| **Registration Date** | March 19, 2002 |
| **Owner** | (REGISTRANT) **Stellar Solutions, Inc.** CORPORATION ILLINOIS 1000 North Harrison Street Algonquin ILLINOIS 601022314 |
| **Attorney of Record** | Daniel R. Frijouf |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |

| | |
|---|---|
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20110905. |
| **Renewal** | 1ST RENEWAL 20110905 |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Sep 20 03:21:45 EDT 2016*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# CITRISURF

| | |
|---|---|
| **Word Mark** | CITRISURF |
| **Goods and Services** | IC 001. US 001 005 006 010 026 046. G & S: Citric acid formulation for passivating metal and metal components. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| | IC 003. US 001 004 006 050 051 052. G & S: Citric acid formulation for cleaning metal and metal components. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85625658 |
| **Filing Date** | May 15, 2012 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 16, 2013 |
| **Registration Number** | **4360101** |
| **International Registration Number** | 1124208 |
| **Registration Date** | July 2, 2013 |
| **Owner** | (REGISTRANT) Stellar Solutions, Inc. CORPORATION ILLINOIS 4511 Prime Parkway McHenry ILLINOIS 60050 |
| **Attorney of Record** | Daniel R. Frijouf |
| **Prior Registrations** | 2549508 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |
|---|---|---|---|---|---|---|---|

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Sep 13 03:21:03 EDT 2016*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | STILL LIST | CURR LIST

PREV LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [      ]  OR  Jump  to record: [      ]  **Record 18 out of 21**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# STELLAR SOLUTIONS

| | |
|---|---|
| **Word Mark** | STELLAR SOLUTIONS |
| **Goods and Services** | IC 001. US 001 005 006 010 026 046. G & S: Citric acid for use in the manufacture of stainless steel. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| | IC 003. US 001 004 006 050 051 052. G & S: Citric acid for use as a cleaner in the manufacture of stainless steel. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76141203 |
| **Filing Date** | October 5, 2000 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 25, 2001 |
| **Registration Number** | 2549509 |
| **Registration Date** | March 19, 2002 |
| **Owner** | (REGISTRANT) **Stellar Solutions**, Inc. CORPORATION ILLINOIS 4511 Prime Parkway McHenry ILLINOIS 60050 |
| **Attorney of Record** | Daniel R. Frijouf |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SOLUTIONS" APART FROM THE MARK AS SHOWN |

| | |
|---|---|
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20110905. |
| **Renewal** | 1ST RENEWAL 20110905 |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Sep 20 03:21:45 EDT 2016*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# STELLAR SOLUTIONS

| | |
|---|---|
| **Word Mark** | STELLAR SOLUTIONS |
| **Goods and Services** | IC 001. US 001 005 006 010 026 046. G & S: Citric acid formulation for passivating metal and metal components. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| | IC 003. US 001 004 006 050 051 052. G & S: Citric acid formulation for cleaning metal and metal components. FIRST USE: 19950130. FIRST USE IN COMMERCE: 19950130 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85625639 |
| **Filing Date** | May 15, 2012 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 16, 2013 |
| **Registration Number** | 4360100 |
| **Registration Date** | July 2, 2013 |
| **Owner** | (REGISTRANT) Stellar Solutions, Inc. CORPORATION ILLINOIS 4511 Prime Parkway McHenry ILLINOIS 60050 |
| **Attorney of Record** | Daniel R. Frijouf |
| **Prior Registrations** | 2549509 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SOLUTIONS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT B

STELLAR SOLUTIONS, INC.
DISTRIBUTOR AGREEMENT

EFFECTIVE AUG 1 6 1996

This Agreement is made and entered into this *16th* day of *August*, 1996, between STELLAR SOLUTIONS, Inc., an Illinois Corporation, having offices in Algonquin, Illinois and MET-CHEM, Inc. (hereinafter called "DISTRIBUTOR"), an Illinois corporation, having principal offices at Rockford, Illinois.

WITNESSETH:

In consideration of the mutual covenants herein contained, STELLAR SOLUTIONS and DISTRIBUTOR agree as follows:

1. STELLAR SOLUTIONS hereby appoints DISTRIBUTOR, and DISTRIBUTOR accepts such appointment, as a distributor of STELLAR SOLUTIONS branded products (hereinafter referred to as "Products"), and STELLAR SOLUTIONS agrees to sell to DISTRIBUTOR Products for re-sale, all in accordance with the terms and conditions of this Agreement.

2. DISTRIBUTOR agrees to use its best efforts to maintain and promote sales of STELLAR SOLUTIONS Products to current customers and new customers within the territory described below. DISTRIBUTOR shall safeguard STELLAR SOLUTIONS' trademarks, employing the same only as permitted by STELLAR SOLUTIONS policies as made known to DISTRIBUTOR, and reporting any unauthorized use of the same to STELLAR SOLUTIONS. DISTRIBUTOR shall ensure that no Products are blended or mixed with products of other companies; he shall further ensure that no products of other companies are ever sold as STELLAR SOLUTIONS Products, and that STELLAR SOLUTIONS Products will not be sold under other names unless approved in writing by STELLAR SOLUTIONS.

3. DISTRIBUTOR's primary sales area shall be as shown on Exhibit A, attached hereto.

4. STELLAR SOLUTIONS shall not appoint other Distributors in the primary sales area during the term hereof.

5. STELLAR SOLUTIONS agrees to make available to DISTRIBUTOR (or DISTRIBUTOR's customers, as appropriate) its promotional literature and product operating instructions. DISTRIBUTOR acknowledges that the purpose is to increase sales and develop new customers of STELLAR SOLUTIONS Products. Accordingly, it is agreed that DISTRIBUTOR shall offer or make available the literature only to Distributor's present and new customers of STELLAR SOLUTIONS Products.

6. STELLAR SOLUTIONS shall appoint a principal liaison between STELLAR SOLUTIONS and DISTRIBUTOR. He will from time to time assist DISTRIBUTOR in promoting STELLAR SOLUTIONS sales, in implementing Programs, or in other ways. Such service shall be performed at STELLAR SOLUTIONS' sole discretion; such performance shall not be deemed a contractual obligation of STELLAR SOLUTIONS' hereunder.

7. DISTRIBUTOR will pay for Products at the prices fixed therefor by STELLAR SOLUTIONS from time to time and in effect at time of shipping, in accordance with STELLAR SOLUTIONS' standard terms and conditions of sale to DISTRIBUTOR as shown on Exhibit B attached.

8. Credit terms to be agreed upon by both parties. The basic policy will be net 30 days unless otherwise indicated at time of sale.

9. This Agreement will be for an initial term of three years, and it shall be renewed automatically for additional terms of two years each, unless either party hereto shall give notice of its intention not to renew not less than sixty days prior to the end of the term. In addition, either party hereto may terminate this Agreement at any time in its sole discretion upon giving ninety days written notice to the other party.

10. In the event of termination of this Agreement, DISTRIBUTOR shall not make claim for or have any right to reimbursement of monies expended by DISTRIBUTOR in any manner whatsoever in the promotion or the sale of STELLAR SOLUTIONS Products, or for other costs and expenses, or for any anticipated profits of present or future sales of such Products.

11. DISTRIBUTOR further agrees, that in the event of termination of this Agreement for any reason, DISTRIBUTOR will not enter into competition with STELLAR SOLUTIONS by promoting, selling, marketing or manufacturing products which could replace the customers use of STELLAR SOLUTIONS Products for a period of at least 3 years.

12. STELLAR SOLUTIONS shall not be liable for any delay or failure to deliver products or otherwise perform hereunder if the delay or failure is due to any contingencies beyond its control, including, but not limited to acts of God, war, riots, strikes, lockouts, embargoes on transportation, impossibility of obtaining raw material, drought, flood, accident, total or partial fire, sale of assets, insolvency or bankruptcy.

13. DISTRIBUTOR has no right to assign this Agreement. Any change in the ownership or control of DISTRIBUTOR, deemed material in the sole judgment of STELLAR SOLUTIONS, shall be construed as an assignment requiring the written consent of STELLAR SOLUTIONS.

14. It is understood and agreed that DISTRIBUTOR is an independent contractor and not the agent, servant, or employee of STELLAR SOLUTIONS. Neither party hereto shall have any right to bind the other party whether orally or in writing. DISTRIBUTOR shall not be authorized to make any representations, descriptive statements, or warranties regarding any Products covered by this Agreement except as contained in written materials furnished to DISTRIBUTOR by STELLAR SOLUTIONS for public distribution.

15. Neither this Agreement nor any oral statements or written materials heretofore or hereafter furnished by STELLAR SOLUTIONS to DISTRIBUTOR shall be deemed to restrict the right of DISTRIBUTOR to determine its own customers or resale prices.

16. This Agreement is further subject to the Addenda Exhibits and Schedules attached hereto.

17. This Agreement supersedes any prior agreement between the parties, whether oral or written. This Agreement is the entire agreement of the parties relating to the subject matter hereof. No agreements, oral or written, shall constitute an amendment of this Agreement unless in writing and specifically denominated as such. Failure of either party to enforce any of its rights hereunder shall not be construed as a waiver of those rights or restrict the right of that party to enforce those rights at any time thereunder, or recover damages for any breach thereof. This Agreement shall be governed by the laws of the State of Illinois regardless of its place of execution or performance hereof.

IN WITNESS WHEREOF, the parties hereto have caused the execution of this agreement in duplicate the day and year first above written.

STELLAR SOLUTIONS
1000 N. Harrison St.
Algonquin, IL 60102

EFFECTIVE AUG 1 6 1996

By: _____

Title: _____

MET-CHEM
1319 Cunningham St.
Rockford, IL 61102

By: _____

Title: _____

EXHIBIT A

**Primary territory description and/or assigned accounts**:

1. Exclusive for all accounts within the city limits of Rockford and Loves Park, IL and the following accounts:

> CamCar in Belvidere, IL
> Racine Plating in Racine, WI
> Modern Plating in Freeport, IL
> Taylor in Rockton, IL

2. Nonexclusive within other domestic areas as agreed to between STELLAR SOLUTIONS and DISTRIBUTOR in writing, including the Chicago area and the states of Tennessee, Arkansas and Florida.

EFFECTIVE AUG 1 6 1996

# EXHIBIT B

1. Pricing will be list prices as published by Stellar Solutions less 20% or as agreed for each product in writing.

2. All prices will be F.O.B. Factory unless otherwise indicated at time of order.

3. Terms will be payment within 30 days of invoice date unless otherwise agreed upon in writing between the parties prior to order.


EFFECTIVE AUG 1 6 1996